IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
CASEY TYLER,                    )
                                )
        Plaintiff,              )
                                )
    v.                          )       1:20CV166
                                )
PAMELA J. LOCKLEAR              )
                                )
        Defendant.              )
```

**ORDER**

This matter is before this court for review of the Memorandum Opinion and Recommendation ("Recommendation") filed on September 1, 2022, by the Magistrate Judge in accordance with 28 U.S.C. § 636(b). (Doc. 42.) In the Recommendation, the Magistrate Judge recommends that Plaintiff's "Motion for Recusal [and] Motion for a New Trial," (Doc. 41), be denied, that Defendant's motion for summary judgment, (Doc. 32), be granted to the extent she be entitled to qualified immunity, that Plaintiff's April 18, 2017, prison disciplinary charge be removed from his prison report, and that this action be dismissed. The Recommendation and notice were served on the parties to this action on September 1, 2022. (Docs. 42, 43.) Plaintiff filed objections, (Doc. 45), to the Recommendation.

This court is required to "make a de novo determination of those portions of the [Magistrate Judge's] report or specified

proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the [M]agistrate [J]udge. . . . [O]r recommit the matter to the [M]agistrate [J]udge with instructions." Id.

This court has appropriately reviewed the portions of the Recommendation to which objections were made and has made a de novo determination which is in accord with the Magistrate Judge's Recommendation. This court therefore adopts the Recommendation with one modification as to the amendment of the records of Scotland Correctional and with the following additional analysis.

## I. THE DEFENDANT'S RECORD AT SCOTLAND CORRECTIONAL

Plaintiff's Complaint explicitly states he is suing Pamela Locklear in her individual capacity and not in her official capacity. (See Doc. 1 at 2.) However, Plaintiff's response says he is "entitled to all types of damages against Locklear," (Doc. 35 at 3.), and his Complaint elaborates that he seeks "the [A-18] charge wiped from [his] records, costs in this suit, $10[,000] in compensatory damages, [and] $100[,000] in punitive damages." (Doc. 1 at 5 (cleaned up).) This court construes Plaintiff's Complaint as he wrote it—meaning, as a suit against Locklear in her individual capacity.

"Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006) (quoting Wilson v. Layne, 526 U.S. 603, 609 (1999). By contrast, in official capacity suits, "qualified immunity is unavailable." Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995). While "a plaintiff may not recover damages against state officials sued in their official capacities," official capacity suits seeking injunctive relief are permitted. Johnson v. Ohai, No. 7:20CV717, 2021 WL 3410319, at *1 (W.D. Va. Aug. 4, 2021).

The term "damages" refers to "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury." Damages, Black's Law Dictionary (11th ed. 2019). "[W]hile [courts] must construe pro se complaints liberally," "our task is not to discern the unexpressed intent of the plaintiff, but what the words in the complaint mean." Laber v. Harvey, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

Here, even though Plaintiff has sought what could be construed as a request for injunctive relief by demanding the removal of the A-18 disciplinary charge from his records, this

- 3 -

court is not convinced that it must now interpret his claims as a lawsuit against Locklear in her official capacity.

Plaintiff explicitly stated he was suing Locklear in her individual capacity and not her official capacity by checking the individual capacity box on his complaint form and leaving the official capacity box unchecked. (See Doc. 1 at 2.) Furthermore, the prewritten text on the complaint form clarified that he was permitted to bring a complaint against defendants "in their individual capacity or official capacity, or both." (Id.) For this court to decide that Plaintiff intended to sue Locklear in her official capacity would require more than a "liberal[]" construction of the pro se complaint, see Laber, 438 F.3d at 413 n.3, it would require interpreting the complaint in direct opposition to its plain meaning.

Additionally, Plaintiff stated he was "entitled to all types of damages against Locklear," (Doc. 35 at 3 (emphasis added)), nowhere in his submissions does Plaintiff characterize the remedies he seeks as injunctive or otherwise state he is seeking equitable relief against Defendant, other than the removal of the charge from his record. (See Doc. 1 at 5.) Furthermore, Plaintiff never makes an assertion that he is suing Locklear's office, rather than her as an individual. Taken together the facts suggest Plaintiff only intended to sue

- 4 -

Locklear in her individual capacity. This court therefore construes the complaint as one seeking relief against Defendant in her individual capacity.

In the Recommendation, the Magistrate Judge recommends that "Plaintiff's April 18, 2017 prison disciplinary charge be removed from his prison report." (Doc. 42 at 14.) It is not clear to this court what authority this Defendant may have, even in her official capacity, to address the record filed in this case that appears to contravene this court's order. Plaintiff has not presented any evidence to support a finding that Defendant has authority to modify or remove the relevant record within Scotland Correctional even if Plaintiff has sued Defendant in her official capacity. Therefore, this court declines to enter an order directing Defendant to modify any records of Scotland Correctional. If Plaintiff believes that the record filed in this case suggests Respondent Erik A. Hooks has failed to "'restor[e] [Plaintiff's] forfeited good-time credits' within thirty days" as ordered previously, (Docs. 25, 26, Tyler v. Hooks, No. 1:17CV833 (M.D.N.C. cert. denied May 18, 2020)), Plaintiff is directed to file a motion for sanctions in Tyler v. Hooks, No. 1:17CV833.

## II. QUALIFIED IMMUNITY

The Recommendation also finds that "it was not objectively unreasonable for Defendant to think that the evidence—prison

- 5 -

officials' statements and the investigation report—used to support her disciplinary decision was sufficient to satisfy the due process requirements for the charged offense against Plaintiff." (Doc. 42 at 11.) Plaintiff objects and argues this holding is inconsistent with the Fourth Circuit's prior finding that the evidence was "at most, neutral assertions or conclusory statements of culpability and are not affirmative evidence of Tyler's guilt." (Doc. 45 at 1-2); Tyler v. Hooks, 945 F.3d 159, 172 (4th Cir. 2019). However, the record in this case, as submitted by Defendant, is different from the record submitted to this court and the Fourth Circuit in Tyler v. Hooks. In addition to the Magistrate Judge's analysis in the Recommendation, this court finds that affirmative evidence was submitted to Defendant during the disciplinary hearing.

In Tyler v. Hooks, The Fourth Circuit found that to prove the due process violation at issue in both of these cases, the State must provide evidence to support the conclusions "that Tyler knew that: (1) his allegation against Officer Gaddy was false and (2) if it were true that it could have exposed Officer Gaddy to criminal liability." Tyler, 945 F.3d at 171.

While the Fourth Circuit expressed its concerns about Officer Gaddy's equivocal statement presented as record evidence, it recognized that there was some ambiguity in that

statement. See Tyler, 945 F.3d at 173. However, on the record in that case, the Fourth Circuit further found there was no evidence to support a finding that Plaintiff knew the false claim could lead to criminal charges. See id.

However, the evidence in this case is different from that presented in Tyler v. Hooks, No. 1:17CV833. There, the prison disciplinary package for the A-18 conviction, (Doc. 6-2, Tyler v. Hooks, No. 1:17CV833), contains the records as described by the Fourth Circuit. That is, records which include at best "neutral assertions or conclusory statements," Tyler, 945 F.3d at 172, such as "[t]he investigating officer reviewed the video and stated that it did not add to nor take away from the reporting party's statement" and "Sgt. Gaddy stated that he had no knowledge of the inmate's disciplinary issue." (Doc. 6-2 at 6, Tyler v. Hooks, No. 1:17CV833.)

The record in this case contains an affidavit by Defendant in which she states that she "reviewed the evidence package in its entirety, which included the investigator's report." (Doc. 33-3 ¶ 15.) Attached to her affidavit is an incident report which was not provided in the previous case. (See Doc. 33-3 at 88-96.) That report, also available at Doc. 33-4, contains substantially more information than was provided in the prior case, Tyler v. Hooks. (Compare, Doc. 33-3 at 88-96 with, Docs.

- 7 -

6-2, 6-3 Tyler v. Hooks, No. 1:17CV833.) Plaintiff has not challenged this new information, instead choosing to rely upon the Fourth Circuit's prior finding on appeal. (See Doc. 35 at 1 ("the 4th Circuit Court of Appeals decided that defendant Locklear had convicted me of a prison rule violation in 2017, without sufficient evidence to do so.").) However, the new evidence submitted in this case provides not only sufficient, but substantial, evidence to support Defendant's finding that Plaintiff knowingly made a false report.

The remaining question is whether any evidence supports a finding by Defendant that Plaintiff "knew that the allegation could have exposed [Officer Gaddy] to criminal liability." Tyler, 945 F.3d at 173. This court does not find the record submitted in this case provides any new insight or evidence on that issue.

Nevertheless, in spite of the fact that there has been substantial evidence presented that Plaintiff knowingly made a false allegation, this court finds qualified immunity still applies. This court finds that at the time of his disciplinary conviction, there was no clearly established law or rule that, in order to violate the Disciplinary Procedures, ch. B, § .0202(a)(A18)(2016), Tyler had to know that his false allegation "could have exposed Officer Gaddy to criminal

- 8 -

liability," Tyler, 945 F.3d at 171, or perhaps more significantly, that Defendant should reasonably know that the adverb "knowingly" applied "to all the subsequently listed elements of the crime." See Tyler, 945 F.3d at 171 (quoting Flores-Figueroa v. United States, 556 U.S. 646, 650 (2009).

The Fourth Circuit relied upon Flores-Figueroa in reaching its conclusion that Tyler had to know that he could have exposed Gaddy to criminal liability before he could be convicted of the A-18 offense. Insofar as this court is aware, the Tyler opinion is the first time Flores-Figueroa's holding has been applied to disciplinary infractions. While this court agrees with the Fourth Circuit's construction of the A-18 rule, this court does not find, here, that a construction consistent with Defendant's findings is unreasonable. As Justice Alito, concurring in part in Flores-Figuero, points out,

> [i]n interpreting a criminal statute such as the one before us, I think it is fair to begin with a general presumption that the specified mens rea applies to all the elements of an offense, but it must be recognized that there are instances in which context may well rebut that presumption. For example, 18 U.S.C. § 2423(a) makes it unlawful to "knowingly transport an individual who has not attained the age of 18 years in interstate or foreign commerce . . . with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense." The Courts of Appeals have uniformly held that a defendant need not know the victim's age to be guilty under this statute.

- 9 -

Flores-Figueroa, 556 U.S. at 660 (cleaned up). Therefore, even an absence of evidence to prove Plaintiff knew his false allegation could have exposed Officer Gaddy to criminal liability is not sufficient to defeat qualified immunity.

In light of the evidence presented here, this court finds that Defendant is entitled to qualified immunity. See Ridpath, 447 F.3d at 306 ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting Wilson, 526 U.S. at 609)); see also Biggs 66 F.3d at 61 (noting that in official capacity suits, "qualified immunity is unavailable"); see also Johnson, 2021 WL 3410319, at *1 (stating that while "a plaintiff may not recover damages against state officials sued in their official capacities," official capacity suits seeking injunctive relief are permitted).

## III. ADDITIONAL ISSUES

This court has independently considered its obligations to recuse in light of Plaintiff's allegations. This court agrees with, and adopts, the findings of the Magistrate Judge. Adverse rulings do not constitute a basis upon which recusal is required.

This court turns now to a matter not raised by the parties or in the Recommendation. This case marks the second time the State of North Carolina has failed to file significant, possibly case dispositive, documents in a timely fashion in matters before this court. A case otherwise unrelated except as to the named Plaintiff, Tyler v. Poole, 1:17CV1142 (M.D.N.C. settlement reported Aug. 5, 2022), was filed and ultimately tried to a jury. After the jury was unable to reach a verdict, a mistrial was declared. (See Doc. 102, Tyler v. Poole, 1:17CV1142.) Following the mistrial, the State, by and through the Attorney General, produced a previously undisclosed "Daily Custody Observations Report" to Plaintiff that was central to the case and explained Plaintiff's conditions of confinement. (See e.g. Doc. 124-1, Tyler v. Poole, 1:17CV1142.) If that document had been produced prior to the mistrial, it might have been case dispositive; as a late-filed document, it resulted hearings and proceedings that would have been completely avoidable had it been disclosed in a timely fashion.

The present case, Tyler v. Locklear, is related to an earlier case, Tyler v. Hooks, 1:17CV833. Both cases arise out of a May 1, 2017 disciplinary proceeding for an A-18 offense. (See, Doc 6 at 1, Tyler v. Hooks, 1:17CV833; see also Doc. 33 at 2, Tyler v. Locklear, 1:20CV166.) In Tyler v. Hooks, the State filed

- 11 -

what purported to be Plaintiff Tyler's prison disciplinary package for his May 1, 2017 A-18 conviction. (Doc. 6-2, <u>Tyler v. Hooks</u>, 1:17CV833.) That disciplinary package was relied upon by the Magistrate Judge, this court, and the Fourth Circuit in reaching our respective decisions.

In the present case, Defendant, by and through counsel, has filed a motion for summary judgment, (Doc. 33), accompanied by an affidavit of the Disciplinary Hearing Officer who adjudicated the May 1, 2017 A-18 disciplinary action, (Doc. 33-3 at 1-3). The affidavit produces and authenticates the full disciplinary record. (<u>Id.</u> at 88-96.) That disciplinary record includes a previously undisclosed Incident Report explaining the full investigation as relevant to the A-18 violation. (Doc. 33-3 at 88-90; Doc. 33-4.) The previously undisclosed Incident Report is not only material in this case; it likely would have been material, if not dispositive, in <u>Tyler v. Hooks</u>.

No evidence has been presented to suggest, nor does it appear to this court, that the belatedly disclosed records described above have been falsely created or presented. They appear to be the original records created and maintained during the regular course of duties at the institution. Nor is it clear why these records were not disclosed in a timely fashion, nor who may be at fault for the failure to provide complete records. Both

- 12 -

the Attorney General's office and the custodian of records at Scotland Correctional Institution should be able to maintain and produce state records in some type of reliable fashion. If either the State or the Institution chooses to act in a manner that undermines its own defenses, that is their decision. However, any such decision, whether intentional or unintentional, will not be permitted to undermine proceedings in this court. The belated disclosure of significant documents reflects an unacceptable indifference to fairness to opposing parties and the court.

The Attorney General and officials at Scotland Correctional Institution are hereby cautioned that any further belated disclosure of records will not be permitted to undermine the fairness of the proceedings in this court for all parties. Any further instances of late disclosure may result in the issuance of a show cause order requiring counsel and the parties to appear and explain any belated production.

For the reasons set out herein,

**IT IS ORDERED** that the Magistrate Judge's Recommendation, (Doc. 42), is **ADOPTED**.

**IT IS FURTHER ORDERED** that Plaintiff's "Motion for Recusal [and] Motion for a New Trial," (Doc. 41), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment, (Doc. 32), is **GRANTED** to the extent she be entitled to qualified immunity.

**IT IS FURTHER ORDERED** that this action is hereby **DISMISSED**.

A Judgment dismissing this action will be entered contemporaneously with this Order.

This the 30th day of September, 2022.

_____
United States District Judge